Good morning. We finally have a panel with three circuit judges, it's been a strange week. We'll hear counsel in Raheel Ahmad Khan v. Dell. Good morning, Your Honor. May it please the Court, my name is Kristi Brown, and along with DeRionne Dickerson, I represent the appellant in this matter, Dell. With the Court's permission, I would like to reserve three minutes of the argument time for rebuttal. We are here today on appeal of the District Court's order denying Dell's motion to compel arbitration. It is undisputed that the parties entered into an arbitration agreement, and it is also the claims that the appellee is asserting in the Court below. Nevertheless, the District Court refused to enforce the arbitration agreement because the arbitration forum that was mentioned in the agreement, the NAF, or the National Arbitration Forum, is no longer administering consumer disputes. And so the only issue before the Court today is whether the District Court erred in holding that the NAF's unavailability rendered the arbitration agreement unenforceable. I thought that you raised in your papers a question about unconscionability, which I'm not sure I understand. Is it your position that the paradigm is resolve unconscionability before you get to determining whether Section 5 and its clause, which requires a substitute arbitration, arbitrator rules, or do you think unconscionability is merely a side issue? I wouldn't say it's a side issue, Your Honor, but the District Court below never reached the issue of unconscionability. Instead, the Court ruled just based on the unavailability of the NAF in the Section 5 issue that the clause was unenforceable. Of course, on appeal, the appellee can urge reversal or affirmance for any reason. And so the issue of unconscionability is before this Court because the Court could affirm the District Court's ruling, finding that the arbitration agreement is unconscionable. But this issue has become considerably more clear after the Supreme Court's decision yesterday in the Concepcion v. AT&T case. In that case, the Supreme Court once again reiterated the strong federal policy in favor of arbitration and held that state unconscionability law being applied to invalidate an arbitration agreement just because a class action waiver is included is preempted. And so to the extent that that issue is still out there, the parties in their briefs took the position the Court should remand so that the District Court resolve it. I would submit that's not totally necessary at this point because the Supreme Court has made it clear that the inclusion of a class action waiver clause in this agreement does not render it unconscionable. We'll all focus on Concepcion, but let me just ask this question. In the absence of Concepcion, what would be the purpose of remand? Just for them to speak to the issue, if we thought that resolution of that preceded resolution of the Section 5. That would be one purpose. Another example would be if the Court were to find in the pre-Concepcion world that for small value dollar claims, perhaps a class action waiver clause is unconscionable. That's something at the time the briefs were submitted that the parties were still arguing about, the Supreme Court has resolved it. But if that issue were still alive, then there are expert affidavits in the record that take positions both ways as to whether this is such a small dollar value claim. So I think that is why a remand could have been appropriate. At this point, it seems to me as though the issue is ripe for ruling. Yes, Your Honor. If we determine that Section 5 of the FAA is applicable here, would it be the District Court who would then appoint an arbitrator? Yes, Your Honor. Under Section 4, it should be, I believe, the District Court that would appoint the arbitrator. Section 5 of the FAA, it applies here. It is mandatory by its terms. And so under Section 5, if there is a lapse for any reason in the naming of an arbitrator, then the statute provides that the District Court shall appoint an arbitrator. When the original arbitrator is unavailable? Section 5 doesn't use words that spell out it applies specifically when an arbitrator is unavailable. Doesn't it? I'm sorry. Go ahead. No, I didn't mean to interrupt, Your Honor. No, no. Go ahead. You talk. Okay. But it does have this broad language, a lapse for any other reason. And the courts that have looked at this language, the Federal Circuit Courts, have concluded that that does apply in the case of arbitrator unavailability. So the 11th Circuit, so held in Brown, the 9th Circuit, so held in Reddam, the 6th Circuit, so held in McMullen. But doesn't that depend on whether the original arbitrator or the arbitral forum is integral to the agreement? Your Honor, I believe it shouldn't depend on that. Because this exception that the courts are applying, this so-called integral exception, it has no footing in the plain and unambiguous text of Section 5. But the courts have so held, and you agree. Several courts. Yes, Your Honor. Yes, Your Honor. The courts have so held. Certainly, the 11th Circuit has so held, the 9th, in reasonably good circuits. Yes, Your Honor, I would say so. The problem is... Not to mention the 3rd. There are two problems. The 11th Circuit is the first court to recognize this integral exception. The 11th Circuit didn't cite any basis for that holding. It said in one sentence, there is an exception where there is an integral arbitrator designation. It didn't try to square that holding with the mandatory language of Section 5. Instead, it cited to a case, the Zeckman case out of the Northern District of Illinois, as establishing that exception. But, Your Honor, the Zeckman case didn't even deal with a Section 5 application. In Zeckman, the failed provision of the arbitration code was actually about the rules or the code that would apply in an arbitration proceeding. And so the Zeckman court said, if this was a case of arbitrator unavailability, then we would apply Section 5. It said we would quote Section 5 and that would be the end of the analysis. But the court found this wasn't an issue of arbitrator unavailability, and so the court applied usual principles of contracting law, looked at this issue of integral, and refused to sever the provision. So when the 11th Circuit lifted this language out of Zeckman, it really took it out of context and recognized an exception that is very hard to square with this plain and unambiguous language of Congress in Section 5. When I went through the briefs and the cases, my notes say that the parties agree that under established case law, if the selection of an arbitrator or arbitral form is integral to the agreement to arbitrate, then Section 5 doesn't apply and the arbitration agreement is invalid. Is that incorrect? Did I read these incorrectly? Your Honor, I don't know if you read it incorrectly. We did take the position... Well, is that the law? Is that... Do you agree that that's... Let's make it easier. Do you agree that that's the established law? I agree that the courts have held that there is an exception to Section 5 in the case of an integral arbitrator designation. Okay. That's what I want. The confusion may be this Court is riding on a clean slate here. The Supreme Court... You mean a clean slate as far as the Third Circuit goes, but not a clean slate as far as the law goes? Correct, Your Honor. A clean slate in the Third Circuit and the Supreme Court. Third Circuit courts have held in the Enri Vistian case, for example, that the words of a federal statute are not to be lightly jettisoned by courts looking to impose their own logic, and that when a statute has plain and unambiguous language, the function of the court is to apply it. So here, applying the exception to Section 5 is inconsistent with the statute. But you agree that the NAF is unavailable? Yes, Your Honor. And it would appear that the NAF is a biased arbitrator. Did you say is a biased arbitrator? Your Honor, the NAF entered into a consent decree based on the investigation of allegations of these undisclosed ownership interests in financial services institutions. There has been no finding ever that any of that bias had anything to do with Dell or that Dell considered that bias in selecting the NAF. But in any event, the NAF is unavailable, and that's the starting point for the analysis. But even assuming that this Court agrees that there is an exception to Section 5 for an integral arbitrator designation. I thought the parties agreed. I thought my beginning question in this line of questioning was the parties agree that if it's integral, then it goes to the heart of the arbitration agreement, right? Your Honor, I think the parties agree that the courts have generally held that. And my argument to you would simply be that it's the Third Circuit looks at this issue. We should be different than the other courts. Yes, Your Honor. Okay. Let me ask you. The appellees argue that it would be very expensive for one individual to prevail in arbitration because the expense of the expert witnesses to demonstrate the inadequacy of the particular Dell model is very expensive, and a particular person could not afford that. Should we simply ignore that plea? Your Honor, under the Supreme Court's decision in Concepcion yesterday, I think the answer to that is yes. The Supreme Court cited a decision, O. Stryker v. Dell, where the parties made that very same argument. And the court in Concepcion yesterday rejected this argument that the fact there's a small value claim that's expensive to prosecute should make a difference. You probably don't know this, but usually when they're... I haven't read the Concepcion opinion. I was busy preparing for today's cases and didn't hit that part of the computer. Usually, the lawyers, if something comes out the day before, hand it up. Do you have copies of that to hand up to the panel? I do. I have a... Your Honor, I only have one copy of the decision, I'm afraid. All right. I'll ask one of the... Oh. One of the lawyers has it. Yours? No. Does mine have it? I've got a very good look for it. Apparently. So do I. This is not... Mine were busy working on the cases. Do you want me to share mine with you? You have it too? Yeah. I mean... I hope you're all embarrassed. No, I just got it. Oh. I didn't have it last night. Is that what she brought up? Yeah. Oh, okay. All right. Go ahead. Your Honor, in any... Well, your time is up. My time is up. Okay. Thank you, Your Honor. Actually, could you... Yeah. Sure. Absolutely. You don't have a red light. That's true. But now that I have it in front of me, I need a second. So just relax for a second. Certainly. Brooke, go get it. Are you the next case, Brooke? Oh, yeah. Never mind. Blaine, you go get it because she's the next case. Your Honor, I have a copy that has one box around the holding, if you would like me to hand it to you. No, that's all right. My colleagues will let me see theirs. Okay. Somebody's going to bring it down. So it appears that the holding says, because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, Section 2 reflects a liberal policy favoring arbitration, which is nothing new. I'm not going to sit here and try to read it. What specifically from this case, Concepcion, applies here? I think there are two different things. Okay. First, on the unconscionability argument. In the Supreme Court decision, the Court considered the exact argument that the appellees have The appellees make an argument that the arbitration agreement is unconscionable because it involves small value claims, and therefore the class action waiver is substantively unconscionable. The Supreme Court rejected that argument in this case, holding that the application of state unconscionability law to invalidate an arbitration provision because it precludes class actions is preempted by the FAA because it prevents and stands as an obstacle to the accomplishment of Congress and the statute. I didn't know about my colleagues. I didn't think unconscionability was the principal issue in this case. It's not. Okay. But it was raised in the briefs. Yeah. It's there. There we go. I didn't think it was principal. You're correct, Your Honor. It's one of the issues in the case, but it's not the principal issue. The second way that this decision is relevant here, as Your Honors ask, is that it's just another example of the Supreme Court taking the opportunity to reiterate and emphasize the strong federal policy in favor of arbitration. But I thought integralness, because it's not integrity from now. Integralness, I thought, was the issue. Should we give any weight to the appellee's definition of lapse and failure to avail in Section 5 that would lead to the conclusion as they posit that Section 5 is inapplicable? Your Honor, when we're talking about what the general state of the case law is, the courts have pretty consistently recognized that this lapse language applies to the unavailability of an arbitrator. In fact, the Caridio and the Carvey Gateway cases that the appellees rely on even accept that premise. The one case that the appellees rely on, this Enri Solomon, and then there's a case called Dover that followed after it. Those cases were not applications of Section 5. In those cases, the court actually referred the claim over to the arbitrator that the parties had selected. There wasn't a lapse in the naming of an arbitrator. The dispute went right where it was supposed to go. But then the arbitrator found the claim was not arbitrable. And so the court held where the parties have agreed to this arbitration forum, we're not going to let them go around that. And so that's a holding that's actually not on point with respect to the application of Section 5 here. Okay. Thank you, Your Honor. Thank you. We'll hear from the appellee. Thank you, Your Honors. If it pleases the Court, my name is Paul Bland, and I represent the plaintiff appellee, Mr. Kahn, here. I would like to start, if possible, with the issue of whether or not the selection of the arbitrator in Section 5 of the contract was integral to the contract. The first reason I want to start with this issue is that while there is a split among the different courts about these other terms in Section 5, about what does lapse mean and what does avail yourself mean, there is no split among the courts that if, in fact, the selection of the arbitrator is integral to the clause, that you can't substitute. Moreover, the parties had agreed to this prior to today. I'm holding in my hand page 9 of Dell's reply brief. And there's a bold section labeled B. The clearly integral test is the appropriate standard for determining whether a substitute arbitrator should be appointed. So it's page 9 of their reply brief they agreed. So today they want you to split and say that the 11th, 9th, 2nd, and 5th Circuit are all wrong, but prior to today they had agreed with us. So is, in fact, the selection of the NAF in this arbitration clause integral? Dell's contract has about six different provisions, which I would submit show that it is, in fact, integral to that the selection of the NAF specifically was integral to the clause. First, in all capital letters, in all capital letters, the NAF is identified as the exclusive administrator of arbitration. And the plain meaning of exclusive means this and no other. So the Pennsylvania Court of Intermediate Court of Appeals in the Stewart case said that by itself was enough to resolve that in that case the identification of the NAF was integral to the contract. Second, the contract uses the mandatory language of the word shell. Again, in all capitals, it says the NAF shall be the arbitrator. The U.S. Court of Appeals for the 5th Circuit in the Ramsey case a few months ago found that similarly mandatory language, now in that case they didn't even use the word exclusive, but they did use the word shell. And the 5th Circuit found that where a contract said that the NAF shall be the administrator, that that showed that it was integral to the arbitration clause. Third, the contract names the NAF's code of procedure. Rule one, rule one of the NAF's code of procedure says this code shall be administered only by the NAF or by any entity or individual providing administrative services by agreement with the NAF. The word only excludes all others. This is on page 235 of the appendix is rule one, rule one of the NAF's code. And this strongly supports the idea that the selection of the NAF was integral. The Illinois Supreme Court in the Carr case, which we cited in our supplemental brief that we just got, our rule 28J letter, the Illinois Supreme Court found they didn't quote, they didn't say rule one, but they identified this exact point that the NAF's rules, unlike those of the AAA or JAMS or most others, which can be used by all sorts of arbitrators, the NAF had a specific rule that said only our people, only our people can administer under the NAF code. Now, by the way, I want to note that I've now named three appellate courts, the Court of Appeals for the 5th Circuit, the Illinois Supreme Court, and the Pennsylvania Court of Appeals in the Stewart case. Those are the only three appellate courts in the United States to issue an opinion that interprets a clause that names the national arbitration form as the administrator of an arbitration clause. All three of those appellate courts found that the identification of the NAF was an integral part of the agreement and struck the entire arbitration clause. A few other contract provisions that are important. First, there are a number of other references. Doesn't striking the arbitration clause go against the Supreme Court's clear favoring of arbitration? Actually, Your Honor, I really strongly disagree with that statement. There was a question, it wasn't a statement. Oh, I'm sorry. No, it does not. I would urge the Court to look at the Supreme Court's decision in the Stolt-Nielsen v. Animal Feeds case that was decided last year. It was a case that was written by Justice Alito. He said that there is a strong policy in favor of arbitration, but only where the parties have agreed to arbitration. Now, in that case, there was an agreement to arbitrate, but it was an agreement to arbitrate between two individual parties. And so one of the parties came in and said, well, since there's an agreement to arbitrate, whenever there's an agreement to arbitrate, you should interpret the agreement as expansively as you can and sweep as many claims as you can into arbitration. And so thus you can have a class action in arbitration. Justice Alito said no. The policy in favor of arbitration is only applicable where the parties have agreed to it. Consent is crucial. And here, parties agreed to one type of arbitration. They agreed to individual bilateral arbitration. They did not agree to a class-wide arbitration. Remind me about Stolz-Nixon. I thought that was one party agreed, the other didn't. I mean, here, both agreed to arbitration. And here's what my concern is. The parties agreed to an arbitration under particular circumstances. The district court disagrees and says, well, if it can't be done under these circumstances, we're going to put arbitration aside. But given the Supreme Court's statement in Concepcion, obviously, and obviously countless other cases in favor of arbitration, and really just from a practical standpoint, doesn't it make sense for issues like the one here to be resolved in that kind of forum rather than individual lawsuits all over the country? Justice Alito took the exact opposite approach. First of all, in the Stolz-Nixon case, there was no doubt whatsoever that both the shipper and the shipping line had an agreement to arbitrate. And Justice Alito specifically said in Stolz-Nixon, part of what consent means is consent to who the arbitrator will be. And one of the arguments that the defendants made in that case was to say, if you have a class action arbitration, then that's going to change around the rules that we had set up for how we would pick who the arbitrator was. So even though there was an agreement to arbitrate, and even though one party said, because of the policy in favor of arbitration, that lets us force all these other claims into arbitration, Justice Alito said no, that consent goes to the manner of arbitration. Here they agreed to one type of arbitration, and they did not agree to any other. That's the same point that all these other circuits have agreed in the clearly integral test. If you were to take Section 5, as counsel now suggests, notwithstanding their reply brief, and you were to strip out all of this case law that says that where the parties have, where the identification of the arbitrator is clearly integral to the contract. If you stripped out that notion, then what you would do is you would be enforcing arbitration clauses contrary to the clearly integral intent of the parties. You would be enforcing arbitration clauses where there's no consent. Here, the language of the party shows, our clients, the parties here, did not agree to arbitration in front of anybody. They agreed to arbitration exclusively, shell, by the National Arbitration Form, and only by the National Arbitration Form, according to its Rule 1. And is it, excuse me, your client's position that if there can't be arbitration by the NAF, that there's something about the NAF, that if it can't be that particular entity, it should not be arbitration? Our client's position is that that's the language of the contract, that that's how you judge it. So they don't really care about the NAF? Well, you know, Your Honor, in a consumer case, if what really matters is what the consumers thought the contract was and what they cared about, there would be no consumer arbitration. I've never had a client in 12 years who knew that the arbitration clause was there. They drafted the arbitration clause. The language of the arbitration clause is what decides it. The Fifth Circuit didn't say, you know, what's in the heart of this company, this computer company, and what's in the heart of the plaintiff and this kind of thing. If this language is unambiguous, the parole evidence of what Mr. Kahn thought he was getting when he got this computer, I feel fairly certain that Mr. Kahn did not know that that language was there. So he doesn't really care? Well, he cares a great deal about the opportunity to vindicate his rights. And the fact here is that... He would like the language of the contract to be enforced as it's written. He does distinctly care that the agreement that Dell drafted be enforced according to its language and that it not be rewritten with other language put in that lets Dell get what it wants when the arbitrator it initially picked was shut down for corruption by law enforcement officials. Let me bring you back to the question that Judge Roth asked a while ago. This is not... You didn't file this as a class action, did you? The case was filed as a putative class action, yes. Yes, Your Honor, it was. And has there been any ruling on the class action? No. The issue of arbitration always comes first before any court would certify a class. So at this point, it is Mr. Kahn, and then if the court strikes the arbitration clause as clearly integral based on all the language in the contract, then it would go back to the district court for a proceedings and the district court would have to decide whether a class action was appropriate or not appropriate. Well, I don't understand why... Why is it... Well, this is a standard arbitration provision. In other words, anybody who bought a Dell computer... It's a contract of adhesion, yes. It's a requirement of getting the computer. I'm sorry, was that... Well, yeah, you were getting where I was getting, which is I assume that given the fact that there's an injunction against NAF because it apparently biased in favor of the sellers, the manufacturers, I would assume that consumer lawyers would not have voluntarily put, agreed to the NAF as the sole arbitrator. Well... Just as an aside. I think that there's no doubt that the consumer community was aware of problems with the National Arbitration Forum for some time before they were shut down. It was very difficult to get the factual evidence that was required to show that they were biased. And I think the Minnesota Attorney General, with the ability to have a pre-suit investigation go in and open up their books, found out something that a lot of us who are practitioners have known. But Mr. Kahn, like all other computer buyers, I don't think any Dell buyer goes and talks to a lawyer before they click yes on the box. Nobody who buys any of this equipment does. I totally agree, Your Honor. If I can go back to a couple of more contract provisions, because I think that if we can win this point that the identification of the NAF was clearly integral, that that resolves this appeal. And there's a couple of other provisions I'd like to point to, if I may. First, there's a provision that says the parties cannot amend the agreement unless it is done in writing with the agreement of both parties. Now, there is no agreement by both parties in writing here to get rid of the National Arbitration Forum as the exclusive entity and they're asking this court to rewrite a contract which they wrote that says it can't be rewritten without both parties' consent. One other point is, if you look at the difference between Dell's contract for consumer arbitration, which is the one at issue here, it's at page A67 of the record, and then a couple of pages later, they put in in their affidavit in favor of their motion to compel arbitration, page A17. You're pointing to them being Dell. Dell, I'm sorry, yes. Dell put in an affidavit that attached what their contract was for small businesses. For small business arbitration, the arbitration clause calls for a non-administered arbitration by the CPR Dispute Institute, and what that means was, they said that Dell would take an arbitration... And so what's a CPR? Consumer Protection? No, it's a commercial, it's a big it's mostly former judges, a lot like GMs, they do all business to business, mostly international disputes. I actually cannot remember what consumer protection is. Yeah, it's definitely not. It's all business. They're not anti-consumer, but they're just, they're agnostic about consumers. But in any case, what they do for businesses is they said, Dell gets to pick an arbitrator, then our business clients get to pick an arbitrator, and those two will pick the third. That's the usual. Right. And see, the National Arbitration Form had a different set of rules than the CPR Institute or GMs or AAA. When you pick the National Arbitration, it's a non-administered clause, like what they had for their business clients. For their consumers, they made a conscious decision to try and nail people down to a particular arbitrator. What's a non-administered? What that means is that there's a set of rules. The AAA has the same thing. They have a set of rules that can apply to any arbitration. So frequently, parties will have the AAA as a shell, and then what the parties can do is you can come in and you could say, you know, the AAA arbitrators are actually really expensive in this city. Why don't we get together and pick somebody who will be a lot cheaper? And they agree to follow the AAA rules because the AAA sets out a lot of good fairness rules. They used the phrase non-administered with respect to CPR because they didn't want to pick one of the CPR arbitrators who are, in fact, extremely expensive. They're top of the line. And they said, we'll pick one, you pick one, and then they'll pick the third. The point of it, though... The ex-judges are top of the line. There's just such a set up their system for consumers, where they say in all capitals, the National Arbitration Forum is the exclusive, shall be the exclusive administrator, and then what they have for businesses, where they said, oh, well, you know, we'll work something out, essentially, in a non-administered thing that doesn't have this NAF rule one. With respect to the conception and the unconscionability issue, conception is a very complicated issue. It is not the end of the game. We will have, if this court rules against us on the integral issue, we will have a lot of good arguments. There will be a lot of factual arguments. It would be a very complex thing. I urge this court not to, based on five minutes of having this conception hand it to you, figure out what it means and issue a decision. If we're going to do that, I would propose that we give the parties some time to write letters on the effect. I agree. If I can just say that because unconscionability is such a fact-specific issue, we probably would want to put in evidence as well if we were permitted. We don't take evidence. That's why I'm urging a remand. Let me ask you the same question that I asked your adversary about the unconscionability issue. Essentially, from your standpoint, it's a side issue. You resolve the integral issue principally anyway. If we win the integral issue, then you don't have to get to what lapse and avail means. You don't have to get to We get that and we're good to go. I'm happy for you. If you lose the integral issue, must we resolve unconscionability? If we lose the integral issue, then we separately have the argument that the Second Circuit got it right in the Salomon shareholders case and said that Section 5 bars the court from picking an arbitrator because this is not a lapse and this is not a bailing. If we lose that issue, then our plan C is let us go back to the trial court and argue unconscionability. We have three levels. Thank you. Ms. Brown, how much rebuttal? Was it two? Three. Thank you, Your Honor. The appellee just told us that the plaintiff had no specific intent with respect to the NAF. That the NAF wasn't something that was important to the plaintiff. Nobody who gets, buys something online and has this arbitration provision stuck in has any intent. They don't even know about it. Anybody who has a credit card is subject to arbitration that was put in. I don't know that intent. There's not a real intent involved. Your Honor, in any event, even in what the appellee is calling adhesive contracts. I'll call them a form contract. Whatever you want to call it. Even in a form contract, courts have never held that the consumer's intent is irrelevant. In fact, that would be somewhat anti-consumer. Nobody ever asks me when I have an American Express card what my intent was with respect to arbitration. Your Honor, if you look at the Jones versus GGNSC case that's cited in the briefs, the court took this very issue on and there was a form contract involved there. The plaintiff was deposed and she testified she did not negotiate the agreement. She did not remember the arbitration agreement. She knew she signed it and the court said under these circumstances, the term specifying the NAF rules was not integral to her decision to sign the agreement. That's a form contract. I'm sorry. I want to just revisit this for a second. It seems like whether Mr. Kahn had intent is really a red herring, right? I mean, shouldn't in the first instance our focus be on whether it's integral or not and then we go from there? Yes, Your Honor. The starting point for the analysis is the actual language of the arbitration agreement. The test for something being integral is as important to the parties as the agreement to arbitrate. There is nothing in this arbitration agreement to suggest that the selection of the NAF was as important to the parties as the agreement to arbitrate. And in fact, in the Carvey Gateway case... I bet it was important to Dell. In other words, if in fact, as the Minnesota Supreme Court has said, NAF was biased in favor of the large companies who put in the arbitration clause, then it was obviously important to Dell to put that in. But is there anything in the record that demonstrates that Dell knew that the NAF was a biased arbitrator? No, Your Honor. We have the injunction by the Minnesota court. And their lawyers knew. But this is not between us, I guess. But Your Honor, that was well after the fact. That consent decree was a long time after this agreement was drafted where Dell selected the NAF. And you have to remember that in the Green Tree case, Justice Ginsburg actually praised the NAF as saying it was a model for consumer efficient arbitration. But whether the NAF is good or not, when you say there's no evidence in the record that it's as important, that the NAF per se is as important to the parties, I thought your adversary made a good point. And obviously we see the language in front of us. Big block letters. For the one in a million who does turn it over, they're going to see, wow, the NAF. Who are they? And apparently they're important because it's in big block letters. And it says shall be resolved exclusively and finally by binding arbitration administered by the NAF. So it's hard to make the argument that it's not as important to the parties. So, Your Honor, I'm out of time. But could I just respond to that question? Sure. Absolutely. The issue is, even an exclusive designation, even if this were an exclusive designation, and the Adler Court thinks that this language is ambiguous on that point, but let's even say it is an exclusive designation, then even when you look at the Carvey Gateway case, which the Appleys rely on, what the Illinois Supreme Court said is, the mere fact the parties name an arbitral service to handle arbitrations and that they specify their rules to be applied, that does not make the designation integral. You have to show it was as important as. And so it could be that the parties intended, if this venue's around, then this is where we're going to arbitrate. But that does not mean, and there's no evidence, that the parties intended the arbitration agreement to go away upon the unavailability of the NAF. They could have included some kind of revoking language, but if the NAF is unavailable... I'm sorry, they who? I guess Dell. Dell could have included language, sorry. Dell could have included language that if the NAF goes away, that the arbitration provision is revoked. That kind of language is fairly common. And in addition, you have to remember that Dell did incorporate the Federal Arbitration Act, and the NAF rules incorporate the Federal Arbitration Act, and that act includes Section 5 as a safety... That's your best argument, frankly. Yes. Yes, Your Honor. Thank you very much. Thank you, Your Honor. I will ask the Supreme Court to send us letters, supplementary letters, short, on the effect of the Supreme Court's decision in Concepcion yesterday on the issues in this case. Give you two weeks to do that, because the rules put everything in terms of seven days nowadays, so two weeks. Are you getting them to respond to each other, or just separate submissions? Separate submissions. Okay. Thank you.